UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>B. JOHNSON, et al.,<br><br>Defendants. | No. 2:17-cv-0544 JAM CKD P<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. §1983. On July 25, 2017, the court screened plaintiff's complaint, as the court is required to do under 28 U.S.C. § 1915A(a), and found that plaintiff may proceed on claims arising under the Eighth Amendment against defendants Johnson, Graves, LaPastora, Ingram and Gallegos (defendants).[1] Defendants filed their answer on October 23, 2017. Their motion for summary judgment is now before the court.

I. Plaintiff's Sur-Reply

Defendants filed their motion for summary judgment on July 20, 2018. Plaintiff filed an opposition on August 2, 2018 and defendants filed a reply on August 8, 2018. Under Local Rule 230(l), a motion is generally submitted when a reply brief is filed or when the time to file a reply

---

[1] On June 6, 2018, the district court judge assigned to this case dismissed any Fourteenth Amendment claim identified by plaintiff in his complaint. ECF No. 28.

1

has expired. On August 20, 2018, and without leave, plaintiff filed a sur-reply. Defendants ask that the sur-reply be stricken.

In their reply brief, defendants object that a document attached as an exhibit to plaintiff's opposition, specifically a "Comprehensive Accommodation Chrono" issued September 28, 2015 (ECF No. 39 at 20 & 27), is "unauthenticated." ECF No. 40 at 3:23-3:26. In his sur-reply, plaintiff, among other things, attempts to cure this. The court considers that portion of plaintiff's sur-reply in which plaintiff attempts to establish authenticity of the "Comprehensive Accommodation Chrono" issued September 28, 2015 pursuant to the court's obligation to grant leeway to pro se prisoner litigants with respect to the technicalities of a motion for summary judgment. See Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). In all other respects, the sur-reply is not considered.

In his sur-reply, plaintiff asserts under the penalty of perjury that he obtained the "Comprehensive Accommodation Chrono" issued September 28, 2015, from the California Department of Corrections and Rehabilitation (CDCR) and the document appears to be a medical record generated by CDCR. Since plaintiff has "produce[d] evidence sufficient to support a finding that [this] item is what [plaintiff] claims it is," specifically, a "Comprehensive Accommodation Chrono," the exhibit is deemed authentic under Rule 901 of the Federal Rules of Evidence.

II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

2

essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

III. Plaintiff's Allegations

In his complaint, which is signed under the penalty of perjury, plaintiff alleges as follows:

1. All events occurred at the California Health Care Facility (CHCF) in Stockton. Defendants Johnson, Graves, LaPastora and Ingram were employed at CHCF as Correctional Officers and Gallegos as a Correctional Sergeant.

2. When plaintiff returned to CHCF from a court appearance on October 15, 2015, plaintiff was re-housed from the ground floor of housing unit E-1-D to an upper floor despite the fact that plaintiff suffered from "ambulatory problems" which had resulted in the issuance of a medical order or "chrono" to custody staff directing that plaintiff not be housed on a floor which would require plaintiff using stairs. Medical orders such as this are available in a prisoner's Unit Health Record (UHR) and Central File (C-File).

3. Plaintiff complained when he was reassigned, but his complaints were ignored.

4. The next day, plaintiff explained his predicament to defendant Johnson who told plaintiff he could do nothing.

5. On October 18, 2015, plaintiff explained the situation to defendant Graves. Plaintiff told Graves that he was having extreme difficulty traversing the stairs. And while Graves saw the "chrono" issued with respect to plaintiff's condition, Graves indicated that she could not return plaintiff to the ground floor. Plaintiff spoke with Graves the next day as well. Graves again "demurred."

6. Plaintiff also spoke with defendant LaPastora on October 19 requesting that she move plaintiff back to the bottom floor as required in the "chrono." She indicated she would not get involved.

4

7. On October 20, plaintiff sought relief from defendant Ingram "due to the increasing difficulty and ambulatory distress that [plaintiff] was [experiencing] on a daily basis." Ingram acknowledged plaintiff's "chrono," but was unwilling to intervene.

8. Plaintiff turned to defendant Sgt. Gallegos, the other defendants' supervising officer, on October 21. Plaintiff presented Gallegos with his "chrono," and informed him that it was becoming harder and harder for him to climb stairs. Gallegos would not move plaintiff to the bottom floor.

9. Over the course of the next 3 days, plaintiff approached defendants "again and again seeking to be placed on the lower tier, but was repeatedly rebuffed and ignored by defendants."

10. On October 28, 2015, plaintiff suffered a "massive fall down the stairs" after one of his knees "buckled and gave way." Plaintiff's injuries were treated at the medical clinic.

11. Upon his return from the medical clinic, plaintiff was assigned a bottom floor cell.

12. Plaintiff suffered "serious" and permanent injuries to his back and legs as a result of his fall, and suffers from "severe and debilitating pain." He has participated in multiple sessions of physical therapy and has been issued a walker with wheels, a wheel chair, and a Transcutaneous Electrical Nerve Stimulation (TENS) unit.

IV. Applicable Eighth Amendment Standards

The Eighth Amendment prohibits state actors from acting with deliberate indifference to an inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825 (1994). A claim based on deliberate indifference to health or safety has two elements. First, an inmate must show he was "incarcerated under conditions posing a substantial risk of serious harm." Id. at 834. Second, the inmate must show he was injured as a result of a defendant's "deliberate indifference" to that risk. Id. Under the deliberate indifference standard, plaintiff must demonstrate prison officials knew he faced a substantial risk of serious harm and that they disregarded that risk by failing to take reasonable measures to abate it. Id. at 847.

/////
/////
/////

V. <u>Defendants' Arguments and Analysis</u>

    A. <u>Defendants Johnson, Graves, LaPastora and Ingram</u>

Evidence before the court indicates defendants Johnson, Graves, LaPastora and Ingram, all correctional officers, had varying degrees of knowledge of plaintiff's medical history and his desire to be returned to a bottom floor cell after he returned from a court appearance on October 15, 2015. One fact common to these defendants is that they all indicate they had no authority to transfer plaintiff back to a bottom floor cell, and plaintiff fails to point to any evidence to the contrary. All of the defendants, including defendant Gallegos, agree that, as a Correctional Sergeant, Gallegos was the only defendant who had any authority to transfer plaintiff to a different cell, or at least to initiate the transfer process.

Sergeant Gallegos admits that at some point after October 15, 2015, plaintiff complained to him about being housed on the upper tier and informed Gallegos that he believed he had a lower tier "chrono." Plaintiff indicates that he informed Gallegos of his predicament at least a week before his fall.

In light of the foregoing, the court cannot find that there is a genuine issue of material fact as to any defendant other than Gallegos causing plaintiff injury since Johnson, Graves, LaPastora and Ingram did not have any authority to transfer plaintiff and the person who did have the authority, Gallegos, was aware of plaintiff's request for a transfer before plaintiff's fall. There is no evidence that any defendant other than Gallegos was privy to knowledge concerning plaintiff's condition that Gallegos was not[2] and no evidence as to what any defendant could have done to effectuate plaintiff's being transferred to the bottom tier, other than making sure Gallegos was aware of plaintiff's request and other relevant information.

/////

/////

---

[2] In his complaint and at his deposition, plaintiff asserts he showed "chronos" to certain defendants. As indicated below, plaintiff presents evidence indicating he was issued a "Comprehensive Accommodation Chrono" dated September 28, 2015 restricting plaintiff to a bottom floor cell. However, plaintiff never obtained possession of this "chrono" before his fall on October 28, 2015. ECF no. 37-4 at 25-26.

6

For these reasons, the court will recommend that defendants' motion for summary judgment be granted with respect to plaintiff's remaining claims against defendants Johnson, Graves, LaPastora and Ingram. Further, as argued by defendants, defendants are entitled to summary judgement with respect to plaintiff's remaining claims against Johnson, Graves, LaPastora and Ingram under the "qualified immunity" doctrine since the facts, taken in the light most favorable to plaintiff, do not demonstrate that their conduct violated a statutory or constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001).

B. Defendant Gallegos

In his affidavit (ECF No. 37-2 at 29-31), defendant Gallegos states, in relevant part, as follows:

> At all times relevant to this lawsuit, I was employed by [CDCR] as a Correctional Sergeant at the California Health Care Facility. . .
>
> At all times relevant . . . I was assigned to [plaintiff's] housing unit. . .
>
> I had the ability to approve or deny housing requests within CDCR policy. However, a Central Control Sergeant had to review, and approve or deny, any recommended housing assignment. . .
>
> On October 15, 2015, Mr. Davis returned to CHCF E Yard from an out-to-court visit and was housed on an upper tier. I do not recall if l personally assigned Mr. Davis to an upper tier cell. However, if I did, I would have checked the CDCR databases, Strategic Offender Management System (SOMS) and the Electronic Records Management System (ERMS), which comprise an inmate's central file, to see if Mr. Davis had any housing restrictions before assigning him a cell.
>
> I did not have access to an inmate's medical file.
>
> On or around October 15, 2015, I observed Mr. Davis walk up and down the stairs to his upper tier cell without issue.
>
> At some point after October l5, 2015, I recall Mr. Davis complaining about being housed on the upper tier, but Mr. Davis never presented me with a copy of a valid chrono requiring him to be housed a lower tier.
>
> At some point after October 15, 2015, after Mr. Davis informed me he believed he had a valid, lower-tier chrono, I checked the SOMS and ERMS databases to see if Mr. Davis had a valid, lower-tier chrono, but I did not find one.

/////

> I did find a chrono dated October 6, 2014, approving Mr. Davis for ground floor cell housing, but it had expired as it was only valid for one year.
>
> I informed Mr. Davis that l could not find a valid, lower-tier chrono for him.
>
> If Mr. Davis presented me with a valid chrono or I located one within his central file, I would have entered a lower tier housing assignment, and forwarded my recommendation to the Central Control Sergeant. The Central Control Sergeant would then generate his or her own paperwork to effectuate the move.
>
> I was unaware that Mr. Davis was at any risk of harm between October 15, 2015, through October 28, 2015, because I observed Mr. Davis walking up and down the stairs without issue, and I did not locate a valid, lower-tier chrono for him.

At his deposition, plaintiff testified that he had obtained a lower tier "chrono" in 2010 due to a motorcycle accident which rendered his legs unstable and that he had fallen "quite a few times" since 2010. ECF No. 37-4 at 19. Plaintiff also testified that while housed at CHCF, plaintiff had always maintained a lower-bunk, lower tier "chrono." ECF No. 37-4 at 26.

Defendants do not dispute that plaintiff was issued a "chrono" for a "permanent" ground floor cell on October 6, 2014 (ECF No. 37-2 at 59). On the "chrono" issued to plaintiff it indicates that even "permanent" "chronos" "shall be reviewed annually." Id. The "chrono" also provides that plaintiff shall be "permanent[ly]" assigned a bottom bunk, permitted to possess a knee brace for his left knee, and orthopedic shoes. Id.

At his deposition, plaintiff clarified that he only spoke with defendant Gallegos on October 21, 2015 and that he did not actually show him a "chrono." Rather, he asked Gallegos to "go into the computer and find it." ECF No. 37-4 at 35. Gallegos told plaintiff he would look into it. Id.

In his affidavit, defendant Graves asserts:

> At some point after October 15, 2015, I recall Mr. Davis complaining about being housed on the upper tier. However, I do not recall Mr. Davis ever producing a valid, lower-tier chrono. I informed Sergeant Gallegos about the situation.

ECF No. 37-2 at 14.

/////

1  Similarly, defendant Johnson indicates that on or around October 15, 2015, plaintiff asked
2  if Johnson could look into his housing assignment "because he believed he should have been
3  housed on a lower tier." Id. at 18. In response, Johnson "consulted with . . . Sergeant Gallegos,
4  and informed [him] of the situation." Id. at 18-19.

5  At his deposition, plaintiff testified that in September 2015, his "chrono" was reviewed by
6  Nurse Practitioner Saipher and reissued. ECF No. 37-4 at 24. Attached as exhibit B to plaintiff's
7  opposition is a "Comprehensive Accommodation Chrono" dated September 28, 2015. ECF No.
8  39 at 20. The "chrono" directs that plaintiff be housed on a ground floor and be permitted to
9  sleep in a bottom bunk.

10  On October 16, 2015, the day after plaintiff had been reassigned away from the ground
11  floor of his housing unit, plaintiff submitted a request that his lower bed and lower bunk "chrono"
12  be renewed. ECF No. 37-2 at 60. At his deposition, plaintiff indicated he took this action after he
13  was told by unidentified correctional staff that a valid "chrono" was not found. ECF No. 37-4 at
14  24, 37, 50. On October 21, 2015, another "Medical Classification Chrono" was issued indicating
15  plaintiff should be restricted from climbing stairs. ECF No. 37-2 at 58. Defendants argue
16  correctional staff would not have had access to the "Medical Classification Chrono." Rather,
17  correctional staff receive direction from medical staff concerning housing by reviewing any
18  "Comprehensive Accommodation Chrono[s]" issued with respect to that particular inmate.

19  Defendants argue that, viewing the facts in the light most favorable to plaintiff, defendant
20  Gallegos was not deliberately indifferent to plaintiff's mobility issues as a matter of law because
21  Gallegos denied plaintiff's request that he be returned to the bottom floor of the housing unit only
22  after checking via computer whether there were any current orders from medical staff indicating
23  plaintiff must be housed on a bottom floor. The court disagrees.

24  As indicated above, plaintiff was issued a "Comprehensive Accommodation Chrono" on
25  September 28, 2015 which directed that plaintiff be housed on a ground floor and be permitted to
26  sleep in a bottom bunk. It is possible defendant Gallegos was aware of the September 28, 2015
27  "chrono" but ignored it. This is a genuine issue of material fact which precludes entry of
28  summary judgment.

9

Even if the court found Gallegos was not aware of the September 28, 2015 "chrono" before plaintiff's fall on October 28, 2015, Gallegos would still not be entitled to summary judgment. First, the court assumes that simply by plaintiff's being housed at CHCF, all correctional staff are on notice that he had some medical concerns which may dictate housing conditions. In fact, it appears plaintiff had maintained a lower-bunk, lower tier "chrono" from the time he arrived at CHCF. Second, it was clear to defendant Gallegos that plaintiff was issued a "chrono" for "permanent" placement in a ground floor cell on October 6, 2014. From the "chrono," Gallegos should have understood that plaintiff had mobility problems since he was assigned a ground floor cell, a bottom bunk, permitted to possess a knee brace for his left knee, and orthopedic shoes. Third, nothing suggests Gallegos had reason to believe that the "permanent" "chrono" had been revoked because plaintiff no longer needed it. Rather, Gallegos, at best, believed the "chrono" had not been renewed within a relatively short period of time after the passing of one year since the issuance of the 2014 "chrono." Considering all of these facts, it was incumbent upon Gallegos to do more than search for a renewal of the "chrono" on a computer database to dispatch his duties under the Eighth Amendment. At a minimum, Gallegos should have undertaken the relatively simple task of checking with medical staff as to whether the 2014 "chrono" had been or would be renewed (which it had been).

Defendant Gallegos asserts he is entitled to summary judgment under the "qualified immunity" doctrine. "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001)

As indicated above, it is clearly established that prison officials are liable under the Eighth Amendment for injuries which result from, at least, their deliberate indifference to conditions of

confinement posing a substantial risk of serious harm. As described above, the evidence before the court establishes at least a genuine issue of material fact as to whether plaintiff suffered injury as a result of defendant Gallegos's deliberate indifference to conditions which presented a substantial risk of serious harm to plaintiff, specifically, plaintiff being forced to climb stairs.

For these reasons, plaintiff's remaining Eighth Amendment claim is not barred on the basis of "qualified immunity."

### C. Punitive Damages

In his complaint, plaintiff seeks punitive damages. Defendants seek summary judgment as to any claim for punitive damages.

Punitive damages may be proper under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). As indicated above, there is a genuine issue of material fact as to whether defendant Gallegos was at least deliberately indifferent to a substantial risk of serious harm to plaintiff. If a finder of fact concludes that Gallegos was at least deliberately indifferent, reckless indifference could also be found. See Farmer, 511 U.S. at 837–39 ("deliberate indifference" for purposes of the Eighth Amendment requires "conscious disregard" of risk, as opposed to civil-law recklessness which requires only that a defendant should have known of the risk). Therefore, defendants are not entitled to summary judgment as to a claim for punitive damages against defendant Gallegos.

### D. Eleventh Amendment

Plaintiff sues all defendants in their individual and official capacities. However, the Eleventh Amendment bars suits for damages against state officials acting in their official capacities. Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). In his complaint, plaintiff seeks injunctive relief, but he fails to point to facts suggesting he is suffering an ongoing violation of his rights or facts that demonstrate the inadequacy of a legal remedy. See G.C. and K.B. Investments v. Wilson, 326 F.3d 1096, 1107 (9th Cir. 2003). For these reasons, plaintiff has no valid cause of action against any defendant in their official capacity.

/////

In accordance with the above, IT IS HEREBY ORDERED that defendants' motion to strike plaintiff's August 20, 2018 sur-reply (ECF No. 42) is granted in part and denied in part as discussed herein.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 37) be granted as to defendants Johnson, Graves, LaPastora and Ingram acting in their individual capacities and all defendants acting in their official capacities; and

2. Denied as to plaintiff's claim arising under the Eighth Amendment against defendant Gallegos acting in his individual capacity.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 13, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
davi0544.msj

12